UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PERRY A. WARD,

          Plaintiff,

   v.

EHW CONSTRUCTORS, et al.,

          Defendants.

CASE NO. C15-5338 BHS

ORDER GRANTING DEFENDANTS' MOTION TO SUSPEND VOLUNTARY MAINTENANCE AND CURE PAYMENTS

This matter comes before the Court on the motion of EHW Constructors, a joint venture comprised of American Bridge Company, Nova Group Inc., and Skanska USA Civil Southeast, Inc. ("Defendants") to suspend voluntary maintenance and cure payments to Perry Ward ("Plaintiff"). Dkt. 86. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

**I. FACUTAL AND PROCEDURAL BACKGROUND**

On July 8, 2014, Plaintiff saw Dr. James M.T. Garrity, who diagnosed Plaintiff with a cervical sprain with signs of C6 radiculopathy, allegedly stemming from a workplace injury. Dkt. 33 at 2. On August 3, 2015, Plaintiff met with Dr. Daniel A.

ORDER - 1

1  Brzusek for consultation. Dkt. 30. Dr. Brzusek also diagnosed Plaintiff with a cervical
2  sprain and C6 radiculopathy and referred him to a neurosurgeon for examination. Dkt. 30
3  at 5.
4      On May 21, 2015, Plaintiff filed a complaint *in rem* and *in personam* for personal
5  injury against Defendants, his employer. Dkt. 1. On June 22, 2015, Plaintiff filed an
6  amended complaint alleging that Defendants have failed to pay mandatory maritime
7  benefits. Dkt. 12.
8      On April 21, 2016, after Defendants began making maintenance and cure
9  payments, Plaintiff met with a neurosurgeon, Dr. William F. Ganz, who recommended a
10 C3–6 anterior discectomy and fusion with decompression of the left and right neural
11 foramina. Dkt. 91 at 5. Dr. Ganz further explained that Plaintiff could not undergo
12 surgery until he was nicotine free and that he must remain nicotine free for three months
13 after the surgery. *Id.* Plaintiff's medical records indicate he reported that he smoked one
14 pack of cigarettes per day. *Id.* at 3.
15     On June 21, 2016, Plaintiff met with Dr. Tung M. Ha, another neurosurgeon, for a
16 second opinion. Dkt. 93 at 11. Dr. Ha made no surgical recommendation at their first
17 meeting, but waited to review the results of Plaintiff's MRI. *Id.* at 5, 12. On July 11,
18 2016, after reviewing Plaintiff's MRI, Dr. Ha agreed with the recommendation of Dr.
19 Ganz and likewise recommended a C3–6 anterior cervical disectomy and fusion. *Id.* at 5.
20 He noted that a less conservative treatment would likely be ineffective. *Id.* at 5. Dr. Ha
21 also explained that Plaintiff must quit smoking for three months prior to surgery. *Id.* at 6.
22 Dr. Ha then noted that Plaintiff said he was still trying to quit. *Id.* at 13.

On July 19, 2016, Plaintiff was examined in a Fed. R. Civ. P. 35 panel exam by Dr. Spencer Greendyke, an orthopedic surgeon, and Dr. Jeffrey Larson, a neurosurgeon. Dkts. 89, 92. Doctors Greendyke and Larson both agreed with the prior surgical recommendations. *Id.* They also noted that Plaintiff reported he had already begun attempts to quit smoking by using nicorette gum and patches. Dkt. 89; Dkt. 92 at 7. However, Dr. Greendyke also noted that Plaintiff admitted he was still smoking one and a half packs of cigarettes each day. Dkt. 92 at 7. Doctors Greendyke and Larson have noted that, without surgery, Plaintiff is at maximum medical improvement. Dkt. 89 at 17; Dkt. 92 at 14.

On August 5, 2016, Plaintiff's counsel informed Defendants' counsel that Plaintiff could no longer have surgery prior to trial as expected. Dkt. 86 at 3; Dkt. 87; Dkt. 95 at 2. It is unclear when Plaintiff will have surgery if he successfully quits smoking—there is no surgery planned. Dkt. 103. The only indication that surgery will occur at some future date appears in Plaintiff's assertion, made on September 7, 2016, that once he has "quit smoking for the required time period, [he] hope[s] to schedule the surgical procedure recommended by Dr. Ganz and Dr. Ha." *Id.* at 3.

On August 25, 2016, Defendants moved to suspend voluntary maintenance and cure payments to Plaintiff. Dkt. 86. On September, 12, 2016, Plaintiff responded. Dkt. 101. On September 16, 2016, Defendants replied. Dkt. 104.

## II. DISCUSSION

Defendants seek to suspend their voluntary maintenance and cure payments to Plaintiff on the bases that (1) Plaintiff has already achieved maximum recovery, or (2)

Plaintiff has forfeited his right to maintenance and cure by withdrawing from treatment. Dkt. 86.

**A.      Maximum Maintenance and Cure**

Defendants first argue that they should be relieved of their duty to provide maintenance and cure because Plaintiff has reached his maximum recovery. The concept of "maintenance and cure" is rooted in ancient maritime law. *Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962). The term refers to a ship owner's obligation to pay for food and lodging ('maintenance') in addition to any necessary health-care expenses ('cure') incurred during the period of recovery from an injury or malady. *Whitman v. Miles*, 387 F.3d 68, 71 (1st Cir. 2004) (citing *Ferrara v. A. & V. Fishing, Inc.*, 99 F.3d 449, 454 (1st Cir. 1996)). Whenever a seaman is injured in the service of his or her vessel, the ship owner must bring a seaman to port for treatment and must pay for maintenance and cure. *Vaughn*, 369 U.S. at 532.

Maintenance and cure must be provided until the seaman reaches "maximum cure"—a recovery as complete as the injury allows. *Permanente S.S. Corp. v. Martinez*, 369 F.2d 297, 298 (9th Cir. 1966). "If any doubts exist as to whether a seaman is entitled to coverage, whether the medical treatment is necessary, or whether maximum cure has been obtained, courts have resolved disputes in favor of the seaman and in favor of granting the payment of medical expenses." *Hedges v. Foss Mar. Co.*, C10-5046 RBL, 2015 WL 402809, at *2 (W.D. Wash. Jan. 29, 2015) (citing *Moore v. The Sally J.*, 27 F. Supp. 2d 1255, 1262 (W.D. Wash. 1998)).

It is clear from the medical reports that Plaintiff has not reached his maximum recovery. Each of Plaintiff's evaluations suggests that he undergo surgery for his injury. Dkts. 88, 89, 91, 93. Although Defendants argue that Plaintiff has reached maximum recovery until he quits smoking and becomes eligible for surgery, this argument tacitly admits that Plaintiff has not yet reached maximum recovery. Accordingly, the Court denies Defendants' motion on this issue.

**B.    Withdrawal from Treatment**

Alternatively, Defendants argue that Plaintiff has forfeited his right to maintenance and cure by withdrawing from the treatment recommended by his doctors. Dkt. 86 at 4–5. Maintenance and cure payments "are held forfeit only under certain well-defined and narrowly limited circumstances." *Oswalt v. Williamson Towing Co., Inc.*, 488 F.2d 51, 53 (5th Cir. 1974). The purpose of maintenance and cure is to provide subsistence while a seaman is recovering. *Whitman*, 387 F.3d at 71. "When, therefore, [maximum recovery] is either reached *or the erstwhile patient voluntarily stops short of its attainment by refusing medical attention*, the justification for the payments likewise ceases." *Oswalt*, 488 F.2d at 54 (emphasis added).

In the Ninth Circuit, "[i]t is well settled that a seaman's right to maintenance and cure is forfeited by voluntary rejection of hospital care." *U.S. v. Johnson*, 160 F.2d 789, 798 (9th Cir.1947), *affirmed in part, reversed in part*, 333 U.S. 46 (1948). *See also Truman v. Chas. Kurz & Co.*, 239 F. Supp. 636, 638 (D. Or. 1965) ("The cases have consistently held that a seaman's right to maintenance and cure is forfeited by voluntary rejection of hospital care on his part"); *Moriarty v. Oliver J. Olson & Co.*, 72 F. Supp.

446, 449 (N.D. Cal. 1947) (Maintenance and cure is forfeited "when [seaman's] conduct at the hospitals has been the equivalent of a rejection of treatment.").

Defendants also cite numerous decisions from other jurisdictions to bolster the argument that maintenance and cure are forfeited by a seaman who "quit[s] participation in a course of therapy already begun." Dkt. 86 at 4–5 (quoting *Oswalt*, 488 F.2d at 53–54). In those cases cited by Defendants, whether a seaman's withdrawal from treatment resulted in a forfeiture of payments depended on whether the seaman made an "*unreasonable* refusal to accept medical care offered by his employer." *Oswalt*, 488 F.2d at 53 (emphasis added).

In the Ninth Circuit, the operative term in this "narrowly limited circumstance" concerning the maintenance and cure obligation appears to be the term *voluntary rejection*, or—in the extra-jurisdictional authorities offered by Defendants—the term *unreasonable refusal*. Here, the undisputed evidence shows that Plaintiff's treatment has been halted and his surgery delayed indefinitely because Plaintiff has failed to quit using nicotine as required by his doctors. Therefore, the Court must assess whether Plaintiff's failure to quit smoking or using nicotine and the delay of any further treatment constitutes a voluntary or unreasonable rejection of medical care.

The Court is sympathetic to the difficulties associated with confronting an addiction, but the choice to quit using nicotine ultimately lies with Plaintiff. Plaintiff cursorily asserts that he is attempting to quit. However, his examination with Dr. Greendyke indicates that his smoking has increased since August 3, 2015, when Dr. Ganz told him that surgery could proceed only after he stopped using nicotine. *Compare* Dkt.

91 at 3 *with* Dkt. 92 at 7. A surgery has not been scheduled. *See* Dkt. 103. No evidence suggests that Plaintiff is progressing down the only avenue of treatment whereby he may further achieve maximum recovery.

The Court finds that Plaintiff's failure to quit smoking is tantamount to a voluntary rejection of treatment for the purpose of applying the Ninth Circuit's precedent in *Johnson*, 160 F.2d 789. To find otherwise would belie the principle that "an injured seaman may not wilfully prolong for an indefinite time the shipowner's liability for his maintenance and cure. He is bound to seek treatment needed to improve his condition . . . ." *Gaynor v. United States*, 90 F. Supp. 751, 754 (E.D. Pa. 1950), *cited with approval on other grounds in Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525, 537 (9th Cir. 1962). The Court further notes that Defendants have stipulated to resume payments if Plaintiff resumes medical treatment. *See* Dkt. 86 at 5. Therefore, the Court's present order will not preclude Plaintiff from receiving further maintenance and cure if he can make a future showing that his smoking habit does not relegate any further treatment to the remote and indefinite future.

**C.    Date of Withdrawal**

While the Court finds that Plaintiff's failure to quit smoking constitutes a constructive withdrawal from treatment, it remains difficult to ascertain an exact date when this withdrawal occurred. The parties have offered little aid to the Court because they have not directly addressed this issue. Arguably, the date of withdrawal could be construed as the time where it first became apparent that Plaintiff was rejecting his doctors' recommendations by failing to reduce his nicotine consumption. Alternatively,

Plaintiff's withdrawal could be deemed effective on the date when he could have had surgery if he was following his doctor's recommendations, but his failure to stop smoking would require that he forgo or reject the prescribed treatment. As stated above, "[i]f any doubts exist as to whether a seaman is entitled to coverage . . . courts have resolved disputes in favor of the seaman and in favor of granting the payment of medical expenses." *Hedges*, C10-5046 RBL, 2015 WL 402809 at *2. Under this standard, the Court finds Plaintiff's withdrawal to be effective on the day when his failure to quit smoking could have resulted in the rejection of some actual treatment.

Dr. Ha recommended surgery and told Plaintiff he needed to quit smoking on July 11, 2016. Dkt. 93 at 5–6. He also told Plaintiff he needed to quit smoking for at least three months prior to surgery. *Id.* at 6. Therefore, so long as Plaintiff was complying with his doctors' recommendations, the earliest day he could be scheduled for treatment was at least three months out. It did not become apparent that Plaintiff was not complying with his doctors' recommendations until he was examined by Dr. Greendyke on July 19, 2016. Dkt. 92. Measuring from the date when it first became apparent that Plaintiff was not complying with his doctors' recommendations, the earliest date when Plaintiff's failure to abstain from nicotine could have resulted in the refusal of the treatment itself would have been October 19, 2016. Therefore, the Court finds that Plaintiff's withdrawal results in the forfeiture of any maintenance payments after October 19, 2016.

### III. ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion to suspend voluntary maintenance and cure payments (Dkt. 86) is **GRANTED**.

Dated this 24th day of October, 2016.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge